**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

**JANE DOE,**
**Individually and on behalf**
**of all others similarly situated,**

    **Plaintiffs,**

v.

**INNOVATIVE ENTERPRISES, INC.**
**SERVE:  CT Corporation System**
         **4701 Cox Road, Ste. 285,**
         **Glen Allen, VA 23060**

    **Defendant.**

Civil No. 4:20-cv-00107

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Comes now the Plaintiff, **JANE DOE**, individually and on behalf of all other similarly situated individuals, for her Class Action Complaint and alleges the following individual and class claims against Innovative Enterprises, Inc.:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendant for violations of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681a-x, which imposes several important requirements on consumer reporting agencies, such as the defendant, that sell employment-related consumer reports.

2. Defendant is a consumer reporting agency (CRA) as defined by the FCRA.

3. Defendant obtains consumer information bearing on consumers' character, general reputation, personal characteristics and mode of living from myriad sources such as criminal and traffic records, social security number information, sex offender registries, sanctions and

debarments records, Department of Health & Human Services inspector general records, Food & Drug Administration debarment records, Office of Foreign Asset Control records, and U.S. General Services Administration excluded persons list.

4. After acquiring consumer information from its sources, Defendant regularly assembles that information into a report, which it then sells to third parties. In this case, Defendant sold information to other CRAs, such as Pinkerton Consulting & Investigations, Inc. (Pinkerton) which then sells the information contained in the reports to other third-parties, which in this case are prospective employers.

5. Defendant sells such consumer reports to customers throughout the country, using facilities of interstate commerce to transmit such reports, including but not limited to electronic transmission.

6. Plaintiff was a victim of an inaccurate consumer report sold by Defendant to a third-party, Pinkerton which sold the report to Plaintiff's prospective employer, Trinity Logistics, Inc. (Trinity), in Seaford, Maryland. Plaintiff was terminated from her job at Trinity, because Trinity relied on the inaccurate and derogatory consumer report about her.

7. Trinity bought an employment-purposed report from Pinkerton, which contained the erroneous criminal record supplied first in a consumer report compiled by Innovative. As a result of Trinity's use of the erroneous consumer report sold to Pinkerton by Defendant, Plaintiff was left jobless and humiliated.

8. Despite the fact that Defendant is a consumer reporting agency and sells consumer reports as defined by the FCRA, it attempts to avoid its obligations under the FCRA by disclaiming FCRA governance in its marketing materials and contracts with third parties.

9. On its website, it publishes this disclaimer:

Innovative Enterprises, Inc. ("IEI") is not a "Consumer Reporting Agency," and services do not constitute a "Consumer Report" as those terms are defined under the federal Fair Credit Reporting Act, 15. U.S.C. § 1681 et seq. ("FCRA"). Services may not be included, in whole or in part, in any Consumer Report, nor may they be used in any way to establish any consumer's eligibility for employment, certain benefits, or any other Permissible Purpose under the FCRA. IEI does not provide services directly to employers, landlords, or to any other entity which makes hiring or rental decisions, or any other decision regulated by the FCRA.

10. However, Innovative specifically markets itself as a company that provides information and services that are governed by the FCRA. https://www.knowthefacts.com/home

11. Innovative markets and supplies data solutions, medical solutions, volunteer solutions, court record solutions, and investigative solutions whereby it collects information about individual consumers, compiles it into a report, and then sells it to third parties.

12. The FCRA imposes several obligations upon Defendant which are not only well-established, but they are easy to follow. It is clear from the Defendant's website that it knows about the FCRA and has chosen not to abide by its strictures.

13. Despite Defendant marketing its solutions for employment purposes, among many other things, it disclaims that the information in the reports that it markets and sells can be used for employment purposes.

14. Defendant has previously been sued for its violations of the FCRA, and thus it knows that it is governed by the FCRA. It is aware of the entire text of the FCRA and its legislative history as well as the regulatory oversight by the Federal Trade Commission.

15. Defendant accesses large databases of public records and related employment histories as a nationwide consumer reporting agency. It accesses databases to prepare and furnish consumer reports for employment and other purposes. Pinkerton provided these consumer reports to prospective and existing employers, including Trinity and the prospective employers of putative class members. These employers refused to hire Plaintiff and other putative class members based

in whole or in part on the contents of the consumer reports.

16. Defendant does not supply any notice to consumers about whom it has sold a report containing adverse employment information to a third party, such as a criminal record in this case.

17. Providing a copy of the consumer report containing criminal background information as well as a statement of consumer rights at the time it supplies such a report to the third-party CRA or employer arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

18. Defendant does not maintain any procedure by which it ensures that the information it reports to its customers is complete or up to date.

19. Plaintiff asserts nationwide class claims against Defendant under 15 U.S.C. § 1681k(a), because Defendant provided the CRA, and ultimately Plaintiff's employer, with a consumer report containing inaccurate criminal information likely to adversely affect Plaintiff's ability to obtain employment without providing Plaintiff notice at the time Defendant provided the report to Pinkerton.

20. Plaintiff also asserts a nationwide class claim against Defendant under 15 U.S.C. § 1681e(a) and 1681b(a) because it provided a consumer report to Pinkerton without a permissible purpose to do so and without reasonable procedures in place to assume the proper use of and lawful purpose of such report. Defendant provided a report that, on its face, states that the consumer report it supplied about Ms. Doe is not to be used to make employment decisions, yet it supplied such a report to an entity that it knew had obtained and used it for an employment purpose.

21. Plaintiff brings an individual claim under 15 U.S.C. § 1681e(b) against Defendant because of inaccuracies contained in the consumer report. Defendant sold a report about Plaintiff that "verified" she was convicted of a crime, but which criminal record was expunged, and thus a legal nullity.

22. In addition, the report was so misleading as to be inaccurate. The fact that a criminal conviction had long ago been expunged and which contained arrest *nolle prosqui* records older than seven years but was nonetheless reported by Defendant to Pinkerton demonstrates not only that the report was inaccurate and obsolete, but also that Pinkerton did not have strict procedures in place to ensure the record was both complete and up to date.

## PARTIES

23. Plaintiff Jane Doe is a "consumer" as defined by 15 U.S.C. § 1681a.

24. Ms. Doe lives in Delaware, which is within the territorial confines of the District of Delaware United States District Court.

25. Innovative Enterprises, Inc., ("Innovative") is a foreign corporation with its principal place of business in Newport News, VA. Innovative conducts business and hires employees in the Eastern District of Virginia, Newport News Division. In July of 2019, Innovative was acquired by Appriss Inc., a foreign corporation with its principal place of business in Louisville, KY.

26. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), that compiles, sells, furnishes, and uses consumer reports and services in the Eastern District of Virginia and throughout the United States.

## JURISDICTION AND VENUE

27. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15

U.S.C. § 1681p.

28. Venue is proper in the Eastern District of Virginia, Newport News Division, because Defendants are subject to personal jurisdiction in this District, maintain places of business in this District, and make employment decisions and/or sell consumer reports regarding individuals residing in this District.  28 U.S.C. § 1391(c).

## GENERAL FACTUAL ALLEGATIONS

29. During the class period, Defendant furnished an employment-purposed consumer report concerning Plaintiff to a third party, Pinkerton Consulting & Investigations, which in turn sold the report to Ms. Doe's employer, Trinity.

30. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies (CRAs), including public record information.

31. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

32. The FCRA mandates that a report user, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the applicant's report and a summary of the applicant's rights under the FCRA.

33. Innovative and Pinkerton are parties to an agreement whereby Innovative furnishes customized, employment-purposed consumer reports about consumers, including but not limited a report known as the "NATCRIM."

34. Under the FCRA, Pinkerton must certify that each consumer report it requests is for a permissible purpose.

35. Innovative may not supply a consumer report to Pinkerton without obtaining a

certification that the consumer report is being provided for a permissible purpose enumerated in the statute.

36. Innovative has an independent obligation to comply with the FCRA.

37. Innovative's violations of the FCRA have been willful, wanton, and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA.

38. Innovative willfully disregards its duties under the FCRA, which it exacts serious consequences on job applicants and interstate commerce. The natural result of Innovative's failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports it sells to third parties.

39. Innovative does not provide notification to consumers that it furnished an employment-purposed consumer report containing a criminal record likely to adversely affect employment *at the time* it provides the report to third parties.

40. Innovative expressly disclaims that it is providing consumer reports for employment purposes, yet it knowingly supplies such reports to third parties that it knows uses the reports for employment purposes.

## THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFF

41. Ms. Doe applied for a job at Trinity on or about August 6, 2016.

42. Trinity requested that Ms. Doe complete an employment application and consumer report authorization and release form.

43. On or about August 22, 2016, Trinity's employee, Hillary Wright, called Ms. Doe by phone and offered her a job. That same day, Trinity emailed a job offer letter to Ms. Doe. (Ex. 1). The offer of employment stated that the full-time position was supposed to start on September 12, 2016, at an hourly rate of $12.

44. On or about August 22, 2016, Ms. Doe accepted the job by signing the offer letter and sending it back to Trinity.

45. On or about August 22, 2016, Ms. Doe completed the necessary paperwork, signed and delivered it to the Trinity office.

46. After delivering the completed employment paperwork, Ms. Doe submitted to a drug test. She was given a tour of the Trinity jobsite and introduced to her new co-workers. She was excited about starting her new job and bought new clothes appropriate for the workplace.

47. Trinity purchased an employment-purposed consumer report about Ms. Doe from Pinkerton, which was requested on August 25, 2016, and fulfilled by Pinkerton in accordance with its standard procedures on August 26, 2016.

48. Thereafter, on August 26, 2016, and in accordance with Pinkerton's standard procedures, Pinkerton furnished Ms. Doe's consumer report to both Trinity and to itself, as Trinity's agent and the party responsible for making the actual hiring decision for Trinity by "flagging" the report as containing a criminal record, marking the report in bold with the words "FLAGGED ORDER."

49. Unbeknownst to Ms. Doe, Trinity and/or Pinkerton used the consumer report it obtained and/or created to take an adverse-employment action against her. Upon information and belief, as Pinkerton is under contract with Trinity, in accordance with the contract, Pinkerton applied Trinity's pre-defined hiring criteria and coded Ms. Doe to be ineligible for employment. Pinkerton did not notify Ms. Doe she was not hired, it did not provide Ms. Doe with a copy of the report containing the criminal record, and it did not provide her with a summary of rights under the FCRA.

50. This adjudication and coding the report as "FLAGGED ORDER" constituted an

"adverse action" by Pinkerton and Trinity.

51. Pinkerton's decision to code Ms. Doe as ineligible for hire was based upon a "hit" containing criminal records attributed to Ms. Doe and furnished in her consumer report.

52. The hit included an inaccurate criminal record from Maryland attributed to Ms. Doe.

53. The record contained information that should never have appeared in any consumer report because it had been expunged nearly four years prior to the report.

54. In addition to the fact that the report contained information that was expunged, it also contained un-adjudicated misdemeanor charges *nolle prosequi* and that predated the report by more than seven years.

55. Not only should the report never have contained expunged records, it should never have contained obsolete arrest information more than seven years old.

56. The Order Summary contained a statement that there were "2 of 2 reports." The summary regarding criminal information included a "verification" that there was a "flagged" result in the National Criminal Database.

57. On August 26, 2016, Trinity's employee, Hillary Wright, called Ms. Doe on the telephone to inform her that Trinity had obtained a "background screening" report (employment-purposed consumer report) that contained criminal conviction and charging information.

58. Ms. Doe explained that the criminal conviction was improperly reported and should not have been on her record at all because it had been expunged nearly four years earlier, in October of 2012.

59. Ms. Wright called Ms. Doe back 20 to 30 minutes later, after speaking to a company director, and terminated Ms. Doe's employment, which is an adverse action as defined in the

FCRA.

60. At the time Ms. Wright, on behalf of Trinity, notified Ms. Doe of the adverse employment action, Trinity did not supply Ms. Doe with a required copy of the employment-purposed consumer report or notice that it had obtained such a report that was likely to have an adverse impact on her employment.

61. At the time that Innovative assembled and disbursed Ms. Doe's consumer report to Pinkerton and Trinity, the actual source of the information -- the Anne Arundel County, Maryland clerk's office -- did not have any expunged records pertaining to Ms. Doe, and it was therefore impossible that Innovative, anyone acting on its behalf, obtained the complete and up-to-date record for Ms. Doe.

62. Ms. Doe had no idea that the inaccurate and outrageous report about her had been assembled and sold by Innovative, which had no permissible purpose to supply the report to any third parties because the only reason for which Ms. Doe provided permission was for an employment purpose.

63. Upon information and belief, Innovative obtained out-of-date and incomplete information about Ms. Doe from either its own incomplete and outdated database or the database of a third party.

64. The disclosure and authorization form that Plaintiff believes that she signed was only for the purpose of obtaining an employment-purposed consumer report.

65. Had Ms. Doe been informed that the report being obtained was for any other purpose than an employment purpose, she would not have authorized the report. Had she been informed that the consumer reporting agency expressly disclaimed the accuracy of and use of the report for employment purposes, she would never have authorized the report.

66. As a result of Innovative's actions and inaction, Plaintiff suffered loss of employment, wages, and other economic losses, humiliation, damage to her reputation, emotional distress, loss of sleep, loss of appetite, relational strain, inconvenience, deprivation of congressionally-mandated information, and invasion of her privacy. The Class suffered a deprivation of congressionally-mandated information at the time it was made available to the users to whom Innovative sold its reports. The class members thus suffered the loss of an opportunity to correct or explain information in their consumer reports before an adverse action was taken.

67. Ms. Doe filed a lawsuit against Trinity and Pinkerton in the District of Delaware. The case against Trinity was resolved by compromise and dismissed. The case against Pinkerton is still pending.

68. In the course of litigation against Pinkerton, in approximately September of 2018, Plaintiff first learned about Innovative's role in supplying the erroneous and damaging consumer report, the "NATCRIM" report, to Pinkerton.

69. Innovative knows or should know that it is governed by the FCRA as a consumer reporting agency and that its reports, including NATCRIM, are consumer reports.

70. Innovative has been previously sued by consumers for similar violations of the FCRA.

71. Innovative knew or should have known that litigation was likely when it received information from Pinkerton concerning the Plaintiff and the mistakes that it had made on her report.

72. Innovative destroys consumer search results after 60 days. However, within a few days after selling the erroneous report about Ms. Doe to Pinkerton, it learned that the report contained the erroneous and derogatory information from Pinkerton. Innovative was informed in

September of 2016 that it had erroneously reported the information. Instead of taking corrective action right away, it shifted the onus onto the innocent consumer to prove that she did not have the criminal record that Innovative reported about her.

73. It is the duty of the consumer reporting agency, not the Plaintiff, to use reasonable procedures to assure maximum possible accuracy.

74. Instead of implementing reasonable procedures to assure maximal accuracy, Defendant merely collected all information it thought it could attribute to Ms. Doe and, without taking reasonable steps to assure it was maximally accurate, within hours supplied an erroneous report about her to Pinkerton.

## CLASS ACTION ALLEGATIONS
### Plaintiffs' Proposed Classes

75. Plaintiff brings this action on a class basis, with initial class definitions that follow.

76. ***The § 1681k(a)(1) Notice Class, on or after August 25, 2015.*** Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681k, Plaintiff brings this action for themselves and on behalf of the following "Notice Class," of which she is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report issued after August 25, 2015, (b) that was furnished by Innovative to a third party, (c) that contained at least one public record of a criminal conviction or arrest, and (d) to whom Innovative did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

77. ***The § 1681c(a) Obsolete Information Class on or after August 26, 2015.*** Ms. Doe brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Obsolete Information Class," of which she is a member, initially defined below:

>All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were the subject of a consumer report for employment purposes (b) provided by Innovative to a third party (c) on or after August 25, 2015, (d) containing a record of an arrest antedating the report by more than seven years.

78. **Numerosity.** Upon information and belief, the putative Classes exceed 50 members each. Information concerning the exact size of the putative Class is within the exclusive possession of Defendant or its agents.

79. The Class members are so numerous that joinder of all members is impracticable.

80. **Typicality.** Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendant's unlawful conduct in violation of the FCRA.

81. **Adequacy.** Plaintiff will fairly and adequately protect the interest of the Class Members and have retained counsel competent and experienced in complex litigation. Plaintiff is a member of the Classes and does not have any interests antagonistic to or in conflict with the members of the Classes. Plaintiff's claims are the same as those of the Classes, which all arise from the same operative facts and are based upon the same legal theories.

82. **Commonality.** Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including by example only and without limitation:

   a. Whether the uniform failure to provide timely a copy of employment purposed consumer reports containing a negative public record violated the FCRA;

   b. Whether Innovative's disclaimer that the report was not to be used for employment purposes rendered the Plaintiff's authorization a nullity and the procurement of the report illegal;

   c. Whether Innovative maintains strict procedures designed to

   insure complete and up-to-date reports when it never obtains a complete and up-to-date court record, therefore § 168lk(a)(2) is inapplicable;

  d. Whether Innovative supplied consumer reports that contain criminal arrest information that antedated the report by more than seven years;

  e. Whether Innovative supplied employment-purposed consumer reports to users without a permissible purpose to do so in violation of 15 U.S.C. § 1681e(a); and

  f. Whether Innovative's violations of the FCRA were "willful."

83. **<u>Superiority</u>.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

84. Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

85. **<u>Predominance</u>.** The claims of the class members, including the common questions of law and fact, predominate over any individual facts or legal issues present in the class claims. There are no factual or legal issues that differ among the putative class members. The principal issues are: (a) whether Defendant sold a consumer report to third parties about Plaintiff and each putative class member for a permissible purpose; (b) whether Defendant had reasonable procedures in place to comply with the FCRA; (c) whether Defendant required that prospective

users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose; (d) whether Defendant made a reasonable effort to verify the uses certified by Pinkerton prior to furnishing such user a consumer report; (e) whether and how Defendant maintained strict procedures to ensure that the criminal public records were complete and up-to-date; (f) whether Defendant sold consumer reports that contained obsolete information to third parties; (g) whether Defendant received advice, guidance, counsel, or legal advice that it was not a consumer reporting agency and/or that the reports it compiled and sold to third parties were consumer reports. Defendant's violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiff and putative class members.

86. The members of the classes can be identified and ascertained by using the Defendant's records, records maintained by its customers and the end-users of consumer reports furnished by Innovative to its CRA clients.

## COUNT I – CLASS CLAIM
### Failure To Provide "At The Time" Notice – 15 U.S.C. § 1681k(a)(1)

87. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

88. The consumer report of the Named Plaintiff and of each member of the "Notice Class" was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

89. As to the Named Plaintiff and the "Notice Class," Innovative uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1).

90. On information and belief, Plaintiff alleges that Innovative obtains public records including criminal records from a third-party consumer reporting agency and does not attempt to obtain this information through its own courthouse searches.

91. On information and belief, Plaintiff alleges that as to the "Notice Class," Innovative did not send such class members a notice pursuant to 15 U.S.C. § 1681k(a)(1).

92. On information and belief, Plaintiff alleges that as to the "Notice Class," Innovative did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnishes and sells these records in one of its reports.

93. Innovative's failure to timely provide the required FCRA notices to the Plaintiff and other members of the "Notice Class" violated 15 U.S.C. § 1681k(a)(1).

94. The conduct, action, and inaction of Defendant was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

95. Plaintiff and other members of the putative "Notice Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Innovative in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### COUNT II – CLASS CLAIM AGAINST INNOVATIVE
#### Obsolete Information – 15 U.S.C. § 1681c(a)

96. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

97. The consumer report about Ms. Doe reported numerous obsolete criminal arrest records that not only were expunged, but which antedated the report by more than seven years.

98. Innovative also included obsolete information – for instance, records of arrests antedating the report by more than seven years – in the consumer reports it sold to third parties about the putative class members.

99. Defendant violated 15 U.S.C. § 1681c(a)(2) by reporting arrest information that was not only expunged, it obviously antedated the report by more than seven years.

100. Defendant knew that it was forbidden by the FCRA to publish criminal arrest information in a consumer report that is older than seven years, but despite this knowledge published the obsolete information anyway.

101. As to the Named Plaintiff and the "Obsolete Information Class," Innovative regularly violates the prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2).

102. As a result of the publication of obsolete information, the Named Plaintiff and the "Obsolete Information Class" were subjected to the publication of information that was deemed obsolete by Congress and specially excluded from information permitted in consumer reports.

103. The conduct, action, and inaction of Innovative was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

104. Plaintiff and other members of the putative "Obsolete Information Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Innovative in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**COUNT III – INDIVIDUAL CLAIM AGAINST INNOVATIVE**
**Failure To Ensure Maximum Possible Accuracy – 15 U.S.C. § 1681e(b)**

105. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth

at length herein.

106. The consumer report about Ms. Doe inaccurately reported numerous erroneous, obsolete and expunged criminal records in a way that made it appear that the consumer had an active criminal record upon which an employment decision might be made, and indeed was made.

107. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding the Plaintiff.

108. As a result of this conduct by Defendant, Plaintiff suffered actual damages, including without limitation, by example only and as described herein on her behalf by Counsel: loss of employment, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

109. Defendant's violations of 15 U.S.C. § 1681e(b) were reckless or willful, rendering Innovative liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Innovative was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

110. Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff and the putative Classes respectfully pray for the following relief:

A. An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

B. The creation of a common fund available to provide notice of and remedy Defendants' unlawful conduct;

C. That judgment be entered for Plaintiff individually for actual and/or statutory

damages and punitive damages against Innovative for violation of 15 U.S.C. § 1681e(b) & pursuant to 15 U.S.C. §§ 1681n and 1681o;

  D.  Statutory and punitive damages for all class claims;

  E.  Attorneys' fees, expenses and costs; and

  F.  Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**JANE DOE,** *individually and on behalf of and all others similarly situated*

By: _____/s/_____
Susan Mary Rotkis, VSB 40693
Price Law Group, APC
382 S. Convent Ave.
Tucson, AZ 85701
Telephone: (520) 622-2481
Email: susan@pricelawgroup.com