**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

Jane Doe, Tyrone Henderson,
and Joe Martinez,
*individually and on behalf*
*of all others similarly situated,*

      Plaintiffs,

                                 **Civil No. 4:20-cv-00107-AWA-LRL**

v.

Innovative Enterprises, Inc.,

                                 **JURY TRIAL DEMANDED**

      Defendant.

## AMENDED CLASS ACTION COMPLAINT

      Come now the Plaintiffs, JANE DOE, TYRONE HENDERSON, and JOE MARTINEZ,

individually and on behalf of all others similarly situated, pursuant to Federal Rule of Civil

Procedure 15(a)(1)(B), for their Amended Class Action Complaint allege the following individual

and class claims against Defendant Innovative Enterprises, Inc.:

### PRELIMINARY STATEMENT

      1.    Plaintiffs bring this action against Defendant for violations of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x, which imposes several important requirements

on consumer reporting agencies ("CRAs"), such as the Defendant, that sell employment-related

consumer reports.

      2.    All three named Plaintiffs have been the subject of background checks that

inaccurately attributed to them criminal records that actually belonged to similarly named

strangers.  Each has been denied employment opportunities because of these defamatory

inaccuracies.  Two have confirmed that such denials originated from Defendant.

3.      After working their way through the process to find out where these inaccurate records were originating, the Plaintiffs discovered Innovative Enterprises, Defendant, a company that used automated processes to webscrape criminal histories off of court websites and assign them to specific consumers—largely based on name alone.  It sold these records to its various customers as belonging to the named plaintiffs. Those customers—CRAs that are called "resellers"—then repackaged and resold them in reports given to end-user employers.

4.      Plaintiffs Doe and Martinez have confirmed that they lost those job opportunities because of Defendant. Plaintiffs Henderson and Martinez sought to obtain the reports and records that Innovative maintained and sold about them, each to no avail.

5.      Accordingly, here Plaintiffs Doe and Martinez allege that Defendant violated the FCRA in several ways. Innovative failed to follow reasonable procedures required under the FCRA to ensure "maximum possible accuracy."  15 U.S.C. § 1681e(b).

6.      Separately, because it claims not to be governed by the FCRA, when Plaintiffs Henderson and Martinez requested a copy of their full file from Innovative, Defendant failed to provide all of the information reported about each requesting consumer (commonly known as a file disclosure).  Defendant violated 15 U.S.C. § 1681g(a), which requires that a CRA provide not only "all information", but also "the sources of the information" in the consumer's file, and comprehensive list of everyone, including end-users, to whom the CRA has provided a report about the consumer. 15 U.S.C. § 1681g(a)(1)–(3).

7.      Finally, Defendant issued consumer reports for employment purposes about Plaintiffs Doe and Martinez, without following the FCRA's requirement that it send them notice "at the time" it is providing negative information about them. 15 U.S.C. § 1681k(a)(1). Defendant

likewise did not have in place strict procedures designed to ensure the information it reported about Plaintiffs was complete and up-to-date.

8.      Plaintiffs Doe and Martinez assert nationwide class claims against Defendant under 15 U.S.C. § 1681k(a), because it provided the CRA, and ultimately these Plaintiffs' employer, with a consumer report containing inaccurate criminal information likely to adversely affect Plaintiffs' ability to obtain employment without providing Plaintiffs with notice at the time it provided the report to Pinkerton and Checkr.

9.      Plaintiffs Henderson and Martinez assert nationwide class claims against Defendant under 15 U.S.C. § 1681g, because Plaintiffs Henderson and Martinez requested their full file disclosures from Defendant, and Defendant refused to provide the information required by 15 U.S.C. § 1681g. Instead, all Defendant provided was a fresh, inaccurate, criminal-history search for Plaintiffs Henderson and Martinez.

10.     This response was deficient in multiple respects, not the least of which it did not disclose the sources of any of the information, and it did not reveal that Defendant had provided reports about Plaintiffs Henderson and Martinez to entities like Checkr.

11.     Plaintiff Doe brings a nationwide class claim against Defendant for its reporting of information that is outdated. The FCRA prohibits the reporting of any criminal-history information that predates the report by more than seven years, and the report Defendant provide to Pinkerton contained non-conviction criminal history that was older than seven years. This is a facial violation of the FCRA, 15 U.S.C. § 1681c(a).

12.     Plaintiffs Doe and Martinez also bring an individual claim under 15 U.S.C. § 1681e(b) against Defendant because of inaccuracies contained in their consumer reports.

## PARTIES

13.     Plaintiff Jane Doe is a "consumer" as defined by 15 U.S.C. § 1681a.

14.     Plaintiff Joe Martinez is a "consumer" as defined by 15 U.S.C. § 1681a.

15.     Plaintiff Tyrone Henderson is a "consumer" as defined by 15 U.S.C. § 1681a.

16.     Innovative is a corporation with its principal place of business in Newport News, VA.  Innovative conducts business and hires employees in the Eastern District of Virginia, Newport News Division.

17.     Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), that compiles, sells, furnishes, and uses consumer reports and services in the Eastern District of Virginia and throughout the United States.

18.     Defendant obtains consumer information bearing on consumers' character, general reputation, personal characteristics and mode of living from myriad sources such as criminal and traffic records, social security number information, sex offender registries, sanctions and debarments records, Department of Health & Human Services inspector general records, Food & Drug Administration debarment records, Office of Foreign Asset Control records, and U.S. General Services Administration excluded persons list.

19.     After acquiring consumer information from its sources, Defendant regularly assembles that information into a report, which it then sells to third parties.  In this case, Defendant sold information to other CRAs, such as Pinkerton Consulting & Investigations, which then sells the information contained in the reports to other third-parties, which in this case are prospective employers.

20.     Defendant sells such consumer reports to customers throughout the country, using facilities of interstate commerce to transmit such reports, including but not limited to electronic transmission.

## JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

22.     Venue is proper in the Eastern District of Virginia, Newport News Division, because Defendant is subject to personal jurisdiction in this District and Division, maintain its principal place of business in this District, and sells consumer reports regarding individuals residing in this District from its business located in this District.  28 U.S.C. § 1391(c).

## FACTS

**A.     Innovative Is A Consumer Reporting Agency.**

23.     Despite the fact that Defendant is a consumer reporting agency and sells consumer reports as defined by the FCRA, it attempts to avoid its obligations under the FCRA by disclaiming FCRA governance in its marketing materials and contracts with third parties.

24.     Despite its statements to the contrary, Innovative specifically markets itself as a company that provides information and services that are governed by the FCRA. https://www.knowthefacts.com/home.

25.     Innovative markets and supplies data solutions, medical solutions, volunteer solutions, court record solutions, and investigative solutions whereby it collects information about individual consumers, compiles it into a report, and then sells it to third parties.

26. Further, because Innovative provides information to companies like Checkr, which Innovative *knows* in turn furnishes consumer reports for employment purposes, Innovative has consented to the FCRA's governance of its activities.

27. The FCRA imposes several obligations upon Defendant which are not only well-established, but they are easy to follow.  It is clear from the Defendant's website, it knows about the FCRA and has chosen not to abide by its strictures.

28. Despite marketing its solutions for employment purposes, among many other things, it disclaims that the information in the reports that it markets and sells for employment purposes can be used for employment purposes.

29. Defendant is aware of the entire text of the FCRA and its legislative history as well as the regulatory oversight by the Federal Trade Commission.

30. Defendant accesses large databases of public records and related employment histories as a nationwide CRA. It accesses and compiles databases to prepare and furnish consumer reports for employment and other purposes. Pinkerton and Checkr provided these consumer reports to prospective and existing employers, including Trinity and the prospective employers of putative class members. These employers refused to hire Plaintiffs Doe and Martinez and other putative class members based in whole or in part on the contents of the consumer reports.

31. Defendant does not supply any notice to consumers about whom it has sold a report containing adverse employment information to a third party, such as the criminal records in the cases of Plaintiffs Doe and Martinez.

32. Providing a copy of the consumer report containing criminal background information as well as a statement of consumer rights at the time it supplies such a report to the third-party CRA or employer arms the nation's millions of job applicants with the knowledge and

information needed to challenge inaccurate, incomplete, and misleading public-records-based consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

33.    Defendant does not maintain any procedure by which it ensures that the information it reports to its customers is complete or up-to-date. Defendant therefore cannot rely on this option for complying with 15 U.S.C. § 1681k(a).

**B.     Facts Regarding Ms. Doe.**

34.    Plaintiff Doe was a victim of an inaccurate consumer report sold by Defendant to a third-party, Pinkerton Consulting & Investigation, which sold the report to Plaintiff's prospective employer, Trinity Logistics, Inc., in Seaford, Maryland.  Plaintiff was terminated from her job at Trinity Logistics, Inc., because Trinity relied on the inaccurate and derogatory consumer report about her.

35.    Trinity bought an employment-purposed report from Pinkerton Consulting and Investigations, LLC, which report contained the erroneous criminal record supplied first in a consumer report compiled by Innovative.  As a result of Trinity's use of the erroneous consumer report sold to Pinkerton by Defendant, Plaintiff Doe was left jobless and humiliated.

36.    Ms. Doe applied for a job at Trinity on or about August 6, 2016.

37.    Trinity requested that Ms. Doe complete an employment application and consumer report authorization and release form.

38.    On or about August 22, 2016, Trinity's employee, Hillary Wright, called Ms. Doe by phone and offered her a job.  That same day, Trinity emailed a job offer letter to Ms. Doe.  The

offer of employment stated that the full-time position was supposed to start on September 12, 2016, at an hourly rate of $12.

39.     On or about August 22, 2016, Ms. Doe accepted the job by signing the offer letter and sending it back to Trinity.

40.     On or about August 22, 2016, Ms. Doe completed the necessary paperwork, signed and delivered it to the Trinity office.

41.     After delivering the completed employment paperwork, Ms. Doe submitted to a drug test.  She was given a tour of the Trinity jobsite and introduced to her new co-workers.  She was excited about her new job and bought new clothes appropriate for her new workplace.

42.     Trinity purchased an employment-purposed consumer report about Ms. Doe from Pinkerton, which was requested on August 25, 2016, and fulfilled by Pinkerton in accordance with its standard procedures on August 26, 2016.

43.     Thereafter, on August 26, 2016, and in accordance with Pinkerton's standard procedures, Pinkerton furnished Ms. Doe's consumer report to both Trinity and to itself, as Trinity's agent and the party responsible for making the actual hiring decision for Trinity by "flagging" the report as containing a criminal record, marking the report in bold with the words "FLAGGED ORDER."

44.     Unbeknownst to Ms. Doe, Trinity and/or Pinkerton used the consumer report it obtained and/or created to take an adverse-employment action against her. Upon information and belief, as Pinkerton is under contract with Trinity, in accordance with the contract, Pinkerton applied Trinity's pre-defined hiring criteria and coded Ms. Doe to be ineligible for employment. Pinkerton did not notify Ms. Doe she was not hired, it did not provide Ms. Doe with a copy of the

report containing the criminal record, and it did not provide her with a summary of rights under the FCRA.

45.     This adjudication and coding the report as "FLAGGED ORDER" constituted an "adverse action" by Pinkerton and Trinity.

46.     Pinkerton's decision to code Ms. Doe as ineligible for hire was based upon a "hit" containing criminal records attributed to Ms. Doe and furnished in her consumer report.

47.     The hit included an inaccurate criminal record from Maryland attributed to Ms. Doe.

48.     The record contained information that should never have appeared in any consumer report because it had been expunged nearly four years prior to the report.

49.     In addition to the fact that the report contained information that was expunged, it also contained un-adjudicated misdemeanor charges *nolle prosqui* and that predated the report by more than seven years.

50.     Not only should the report never have contained expunged records, it should never have contained obsolete arrest information more than seven years old.

51.     The Order Summary contained a statement that there were "2 of 2 reports."  The summary regarding criminal information included a "verification" that there was a "flagged" result in the National Criminal Database.

52.     On August 26, 2016, Trinity's employee, Hillary Wright, called Ms. Doe on the telephone to inform her that Trinity had obtained a "background screening" report (employment-purposed consumer report) that contained criminal conviction and charging information.

53.     Ms. Doe explained that the criminal conviction was improperly reported and should not have been on her record at all because it had been expunged nearly four years earlier, in October of 2012.

54.     Ms. Wright called Ms. Doe back 20 to 30 minutes later, after speaking to a company director, and terminated Ms. Doe's employment, which is an adverse action as defined in the FCRA.

55.     At the time Ms. Wright, on behalf of Trinity, notified Ms. Doe of the adverse employment action, Trinity did not supply Ms. Doe with a required copy of the employment-purposed consumer report or notice that it had obtained such a report that was likely to have an adverse impact on her employment.

56.     At the time that Innovative assembled and disbursed Ms. Doe's consumer report to Pinkerton and Trinity, the actual source of the information – the Anne Arundel County, Maryland clerk's office – did not have any expunged records pertaining to Ms. Doe, and it was therefore impossible that Innovative, anyone acting on its behalf, obtained the complete and up-to-date record for Ms. Doe.

57.     Ms. Doe had no idea that the inaccurate and outrageous report about her had been assembled and sold by Innovative, which had no permissible purpose to supply the report to any third parties because the only reason for which Ms. Doe provided permission was for an employment purpose.

58.     Upon information and belief, Innovative obtained out-of-date and incomplete information about Ms. Doe from either its own incomplete and outdated database or the database of a third party.

59.     The disclosure and authorization form that Plaintiff believes that she signed was only for the purpose of obtaining an employment-purposed consumer report.

60.     Had Ms. Doe been informed that the report being obtained was for any other purpose than an employment purpose, she would not have authorized the report.  Had she been informed that the consumer reporting agency expressly disclaimed the accuracy of and use of the report for employment purposes, she would never have authorized the report.

61.     As a result of Innovative's actions and inaction, Plaintiff suffered loss of employment, wages, and other economic losses, humiliation, damage to her reputation, emotional distress, loss of sleep, loss of appetite, relational strain, inconvenience, deprivation of congressionally-mandated information, and invasion of her privacy. The Class suffered a deprivation of congressionally-mandated information at the time it was made available to the users to whom Innovative sold its reports.  The class members thus suffered the loss of an opportunity to correct or explain information in their consumer reports before an adverse action was taken.

62.     Ms. Doe filed a lawsuit against Trinity and Pinkerton in the District of Delaware. The case against Trinity was resolved by compromise and dismissed.  The case against Pinkerton is still pending.

63.     In the course of litigation against Pinkerton, in approximately September of 2018, Plaintiff first learned about Innovative's role in supplying the erroneous and damaging consumer report, the "NATCRIM" report, to Pinkerton.

64.     Innovative knows or should know that it is governed by the FCRA as a consumer reporting agency and that its reports, including NATCRIM, are consumer reports.

65.     Innovative has been previously sued by consumers for similar violations of the FCRA.

66.     Innovative knew or should have known that litigation was likely when it received information from Pinkerton concerning the Plaintiff and the mistakes that it had made on her report.

67.     Innovative destroys consumer search results after 60 days.  However, within a few days after selling the erroneous report about Ms. Doe to Pinkerton, it learned that the report contained the erroneous and derogatory information from Pinkerton.  Innovative was informed in September of 2016 that it had erroneously reported the information.  Instead of taking corrective action right away, it shifted the onus onto the innocent consumer to prove that she did not have the criminal record that Innovative reported about her.

68.     It is the duty of the consumer reporting agency, not the Plaintiff, to use reasonable procedures to assure maximum possible accuracy.

69.     Instead of implementing reasonable procedures to assure maximal accuracy, Defendant merely collected all information it thought it could attribute to Ms. Doe, and without taking reasonable steps to assure it was maximally accurate, within hours supplied an erroneous report about her to Pinkerton.

**C.      Facts Regarding Mr. Martinez.**

70.     Similarly, in around January 2020 Defendant sold an inaccurate consumer report about Plaintiff Martinez to Checkr, a background reporting company hired by one of Plaintiff Martinez's prospective employers. The report Checkr ultimately provided to the employer contained criminal-history information that did not belong to Plaintiff, yet was furnished to Checkr by Defendant, costing Plaintiff a potential job.

71.     In around January 2020, Plaintiff Martinez applied for work with Favor Delivery in Texas.

72.     As part of its evaluation of Plaintiff for employment, Favor sought an employment-purposed consumer report from non-Party Checkr. Checkr obtained national criminal history records purportedly about Plaintiff from Innovative, which should have included no records because Plaintiff Martinez has no criminal history. Checkr included that inaccurate information in the report it provided to Favor.

73.     Despite providing to Checkr criminal history about Plaintiff that was likely to have an adverse affect on Plaintiff's ability to obtain employment at Favor, Innovative did not provide Plaintiff with notice it was providing that information to Checkr at the time it did so.

74.     Defendant also did not employ strict procedures designed to ensure the criminal-history information it reported about Plaintiff Martinez was complete and up-to-date.

75.     Based on the inaccurate information in the Checkr report, Favor declined to hire Plaintiff Martinez.

76.     Hoping to get to the bottom of the inaccuracies in the report to Checkr, Plaintiff Martinez wrote to Innovative and asked for his Section 1681g file disclosure in April 2020. Innovative refused.

77.     Rather than provide a full file disclosure, Defendant appears to have only run fresh criminal-record searches on Plaintiff Martinez, which again are inaccurate because Plaintiff Martinez has no criminal history. It is these new searches that Innovative provided to Plaintiff Martinez in response to his request for his full file disclosure.

78.     Innovative also sent Plaintiff a letter replete with qualifications about its supposed operation outside the FCRA and its lack of confidence in the accuracy of the information it was providing.

79.     The disclosure did not include any sources of information and, although Innovative had provided information to Checkr in January 2020, did not state that Innovative had provided that report to Checkr, or reports about Plaintiff Martinez to anyone else.

**D.      Facts Regarding Mr. Henderson.**

80.     Plaintiff Henderson's plight is similar. He has the unfortunate circumstance of having the same first and last name and date of birth of a Tyrone Henderson who has a significant criminal history. Plaintiff Tyrone Henderson has no criminal history.

81.     Yet, Plaintiff Henderson has filed numerous federal lawsuits against background reporting companies who, time after time, mix his information with the criminal Tyrone Henderson's when Plaintiff Henderson applies for work.

82.     Because of the proliferation of background reporting companies, the fact that they do not exchange information, and employers can be counted on to largely use a different company to perform background checks, Plaintiff Henderson is engaged in a nearly endless game of whack-a-mole in attempting to clear his background reports.

83.     To that end, Plaintiff Henderson wrote to Defendant and, like Plaintiff Martinez, requested his file disclosure. Innovative refused, instead ran a fresh criminal-records search that produced inaccurate results, and sent that document to Plaintiff Henderson.

84.     And again, like Plaintiff Martinez, Defendant did not provide Plaintiff Henderson with a list of third parties to which it had provided information about Plaintiff Henderson or, alternatively, inform him that it had not provided any reports about him.

**E.      Defendant's Business Practices And Attempted FCRA Avoidance Generally.**

85.     In its responses to Plaintiff Martinez's and Henderson's requests for their full files, Defendant attempts to perpetuate the fantasy that it is not a CRA:

14

- Innovative is **not** a *consumer reporting agency*

- Innovative does **not** maintain a *"file"* on you or on any other individual consumer

- Innovative does **not** do business with *employers*, *landlords*, or other entities who may make decisions about *hiring* you or about *renting* you an apartment or property.

86.     The letter Plaintiffs received from Innovative is a form letter, and its footer indicates it was last revised May 29, 2018. That means Innovative has spent at least the last two years improperly denying consumers their disclosures under the FCRA.

87.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information like criminal history.

88.     Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by CRAs, prospective employers, and other individuals.

89.     The FCRA mandates that a report user, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the applicant's report and a summary of the applicant's rights under the FCRA.

90.     Innovative has in place agreements with Pinkerton and Checkr whereby Innovative furnishes customized, employment-purposed consumer reports about consumers, including but not limited a report known as the "NATCRIM."

91.     Under the FCRA, Pinkerton and Checkr must certify that each consumer report they request from Innovative is for a permissible purpose.

92.     Innovative may not supply a consumer report to Pinkerton or Checkr without obtaining a certification that the consumer report is being provided for a permissible purpose enumerated in the statute.

93.     Innovative has an independent obligation to comply with the FCRA.

94.     Innovative's violations of the FCRA have been willful, wanton, and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA.

95.     Innovative willfully disregards its duties under the FCRA, which exacts serious consequences on job applicants and interstate commerce. The natural result of Innovative's failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports it sells to third parties.

96.     Innovative does not provide notification to consumers that it furnished an employment-purposed consumer report containing a criminal record likely to adversely affect employment *at the time* it provides the report to third parties.

97.     Innovative expressly disclaims that it is providing consumer reports for employment purposes, yet it knowingly supplies such reports to third parties that it knows uses the reports for employment purposes.

98.     Given this lack of notice, if consumers are lucky enough to learn that Innovative reported information about them, Innovative freezes them out when these consumers ask for their file disclosures.

99.     Instead of revealing the information it possesses, the sources, and to whom it has provided such information, Innovative gives consumers a freshly conducted set of criminal records.

100.    This is problematic not just because it fails to meet the most-basic disclosure requirement the FCRA demands, but Innovative does not let consumers know where it obtained the information it is reporting, or to whom Innovative gave it. Adding to the difficulty, wading through Innovative's litany of disclaimers that the information may not be accurate and the FCRA does not govern it, nowhere does Innovative even commit that the information it provides consumers is also information it provided to someone else.

101.    Using Plaintiff Martinez's case as an example, his Innovative disclosure does not permit him to confirm whether the disclosure contains information Innovative admits it gave to Checkr.

102.    Such secrecy and misdirection are the antithesis of the transparency Congress anticipated when it enacted Section 1681g.

## CLASS ACTION ALLEGATIONS

### PLAINTIFFS' PROPOSED CLASSES

103.    Plaintiffs bring this action on a class basis, with initial class definitions that follow.

104.    ***The § 1681k(a)(1) Notice Class, on or after August 25, 2015.*** Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681k, Plaintiffs Doe and Martinez bring this action for themselves and on behalf of the following "Section 1681k Notice Class," of which they are members, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of the sale by Defendant of one or more criminal public records after August 25, 2015, (b) sold to a consumer reporting agency that resold the data to an end-user for an employment purpose, and (c) to whom Innovative did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice to the subject consumer that it was furnishing the report and containing the name of the person that was to receive the report.

17

105.     ***The § 1681c(a) Obsolete Information Class on or after August 26, 2015.*** Ms. Doe

brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure,

on behalf of the following "Obsolete Information Class," of which she is a member, initially

defined below:

> All natural persons residing in the United States (including all territories and other
> political subdivisions of the United States), (a) who were the subject of the sale by
> Defendant of one or more criminal public records to a third party (b) on or after
> August 25, 2015, (c) containing a record of an arrest antedating the report by more
> than seven years.

106.     ***The § 1681g Disclosure Class.*** Plaintiffs Martinez and Henderson bring this action

for themselves and on behalf of the following "Section 1681g Disclosure Class," of which they

are members, initially defined as:

> All natural persons residing in the United States (including all territories and other
> political subdivisions of the United States) who requested their full file disclosure
> from Innovative on or after August 25, 2018.

107.     **Numerosity.**    Upon information and belief, the putative Classes exceed 50

members each.  Information concerning the exact size of the putative Class is within the exclusive

possession of Defendant or its agents.

108.     The Class members are so numerous and geographically dispersed that joinder of

all members is impracticable.

109.     **Typicality.** Plaintiffs' claims are typical of the claims of the other Class members

as all Class members were similarly affected by Defendant's unlawful conduct in violation of the

FCRA.

110.     **Adequacy.** Plaintiffs will fairly and adequately protect the interest of the Class

Members and have retained counsel competent and experienced in complex litigation. Plaintiffs

are members of the Classes and do not have any interests antagonistic to or in conflict with the

members of the Classes. Plaintiff's claims are the same as those of the Classes, which all arise from the same operative facts and are based upon the same legal theories.

111.    **Commonality.**  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including by example only and without limitation:

a.      Whether the uniform failure to provide timely a copy of employment purposed consumer reports containing a negative public record violated the FCRA;

b.      Whether Innovative's disclaimer that the report was not to be used for employment purposes rendered the Plaintiff's authorization a nullity and the procurement of the report illegal;

c.      Whether Innovative maintains strict procedures designed to insure complete and up-to-date reports when it never obtains a complete and up-to-date court record, therefore § 168lk(a)(2) is inapplicable;

d.      Whether Innovative supplied consumer reports that contain criminal arrest information that antedated the report by more than seven years;

e.      Whether Innovative supplied employment-purposed consumer reports to users without a permissible purpose to do so in violation of 15 U.S.C. § 1681e(a);

f.      Whether Innovative's full file disclosures meet the requirements of 15 U.S.C. § 1681g;

g.      Whether Innovative's violations of the FCRA were "willful."

112.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

113.    Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Classes, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

114.    **Predominance.** The claims of the class members, including the common questions of law and fact, predominate over any individual facts or legal issues present in the class claims. There are no factual or legal issues that differ among the putative class members. The principal issues are: (a) whether Defendant sold a consumer report to third parties about Plaintiff and each putative class member for a permissible purpose; (b) whether Defendant had reasonable procedures in place to comply with the FCRA; (c) whether Defendant required that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose; (d) whether Defendant made a reasonable effort to verify the uses certified by Pinkerton prior to furnishing such user a consumer report; (e) whether and how Defendant maintained strict procedures to ensure that the criminal public records were complete and up-to-date; (f) whether Defendant sold consumer reports that contained obsolete information to third parties; (g) whether Defendant received advice, guidance, counsel, or legal advice that it was not a consumer reporting agency and/or that the reports it compiled and sold to third parties were consumer reports; (h) whether Defendant delivers compliant full-file disclosures; and (i) whether Defendant acted willfully.  Defendants' violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiffs and putative Class Members.

115.    The members of the classes can be identified and ascertained by using the Defendant's records, records maintained by its customers and the end-users of consumer reports furnished by Innovative to its CRA clients.

## COUNT ONE – CLASS CLAIM

### Failure To Provide "At The Time" Notice – 15 U.S.C. § 1681k(a)(1)

116.    Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

117.    The consumer report of Plaintiffs Doe and Martinez and of each member of the "1681k Notice Class" was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

118.    As to Plaintiffs Doe and Martinez and the "1681k Notice Class," Innovative uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1).

119.    On information and belief, Plaintiffs allege that Innovative obtains public records including criminal records from a third-party consumer reporting agency and does not attempt to obtain this information through its own courthouse searches.

120.    On information and belief, Plaintiffs allege that as to the "1681k Notice Class," Innovative did not send such class members a notice pursuant to 15 U.S.C. § 1681k(a)(1).

121.    On information and belief, Plaintiffs allege that as to the "1681k Notice Class," Innovative did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnishes and sells these records in one of its reports.

122.    Innovative's failure to timely provide the required FCRA notices to the Plaintiffs and other members of the "1681k Notice Class" violated 15 U.S.C. § 1681k(a)(1).

123.    The conduct, action, and inaction of Defendant was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

124.    Plaintiffs and other members of the putative "1681k Notice Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Innovative in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT TWO – CLASS CLAIM

### Obsolete Information – 15 U.S.C. § 1681c(a)

125.    Plaintiff Doe reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

126.    The consumer report about Ms. Doe reported numerous obsolete criminal arrest records that not only were expunged, but which antedated the report by more than seven years.

127.    Innovative also included obsolete information—for instance, records of arrests antedating the report by more than seven years—in the consumer reports it sold to third parties about the putative class members.

128.    Defendant violated 15 U.S.C. § 1681c(a)(2) by reporting arrest information that was not only expunged, it obviously antedated the report by more than seven years.

129.    Defendant knew that it was forbidden by the FCRA to publish criminal arrest information in a consumer report that is older than seven years, but despite this knowledge published the obsolete information anyway.

130.    As to Plaintiff Doe and the "Obsolete Information Class," Innovative regularly violates the prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2).

131.    As a result of the publication of obsolete information, Plaintiff Doe and the "Obsolete Information Class" were subjected to the publication of information that was deemed obsolete by Congress and specially excluded from information permitted in consumer reports.

132.    The conduct, action, and inaction of Innovative was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

133.    Plaintiff Doe and other members of the putative "Obsolete Information Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Innovative in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT THREE – CLASS CLAIM

### Incomplete Disclosures – 15 U.S.C. § 1681g(a)

134.    Plaintiffs Henderson and Martinez reiterate each of the allegations in the preceding paragraphs as if set forth herein at length.

135.    Plaintiffs Henderson and Martinez requested from Innovative their full file disclosures as permitted by the FCRA.

136.    Section 1681g required Innovative to respond with all of the information it possessed about Plaintiffs, including the sources of such information, as well as a list of those third parties to whom Innovative furnished information.

137.    Innovative instead provided a litany of excuses as to why it supposedly did not have to comply with Plaintiffs' requests, as well as a non-compliant, inaccurate criminal history search about Plaintiffs.

138.     Defendant violated 15 U.S.C. § 1681g(a) by refusing to provide nearly all of the information required by Section 1681g(a).

139.     Defendant knew that the FCRA required it to provide a fulsome disclosure, including all the information it possessed about Plaintiffs at the time of their request, the sources of that information, and a list of the entities—like Checkr—to whom it had provided information about Plaintiffs.

140.     Despite this knowledge and the easy-to interpret and follow statutory mandates, Defendant failed to meet its statutory duties to provide valid disclosures.

141.     As a result, Plaintiffs were deprived of information to which they are statutorily entitled, and were also prevented from being able to learn the sources of information so that they could potentially correct inaccuracies Defendant was perpetuating about them, as well as being kept in the dark as to whom Defendant had provided information about them.

142.     As to Plaintiffs Henderson and Martinez and the "Disclosure Class," Innovative regularly fails to provide fulsome file disclosures in violation of 15 U.S.C. § 1681g(a).

143.     As a result of the failure to provide compliant disclosures, Plaintiffs Henderson and Martinez and the "1681g Disclosure Class" were subjected to the deprivation of information to which Congress has deemed them entitled to upon a simple request.

144.     The value of a full file disclosure is significant and easily greater than $12.50.

145.     The denial of the full information required in such disclosure caused actual monetary harm in some amount at or over $12.50.

146.     The conduct, action, and inaction of Innovative was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

147.    Plaintiffs Henderson and Martinez and other members of the putative "1681g Disclosure Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Innovative in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT FOUR – INDIVIDUAL CLAIM

### Failure To Ensure Maximum Possible Accuracy – 15 U.S.C. § 1681e(b)

148.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

149.    The consumer report about Ms. Doe inaccurately reported numerous erroneous, obsolete and expunged criminal records in a way that made it appear that the consumer had an active criminal record upon which an employment decision might be made, and indeed was made.

150.    Likewise, the consumer report about Plaintiff Martinez contained multiple entries of criminal history, including felony-level drug offenses, that do not belong to Plaintiff Martinez. Plaintiff Martinez has no criminal history.

151.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiffs Doe and Martinez.

152.    As a result of this conduct by Defendant, Plaintiffs Doe and Martinez suffered actual damages, including without limitation, by example only and as described herein on her behalf by Counsel: loss of employment, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

153.    Defendant's violations of 15 U.S.C. § 1681e(b) were reckless or willful, rendering Innovative liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Innovative was negligent, entitling Plaintiffs Doe and Martinez to recover under 15 U.S.C. § 1681o.

154.    Plaintiffs are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiffs and the putative Classes respectfully pray for the following relief:

A.  An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

B.  The creation of a common fund available to provide notice of and remedy Defendant's unlawful conduct;

C.  That judgment be entered for Plaintiffs individually for actual and/or statutory damages and punitive damages against Innovative for violation of 15 U.S.C. § 1681e(b) and pursuant to 15 U.S.C. §§ 1681n and 1681o;

D.  Statutory and punitive damages for all class claims;

E.  Attorneys' fees, expenses and costs; and

F.  Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**JANE DOE**, *individually and on behalf of and all others similarly situated*

By:____/s/_____

Craig C. Marchiando, VSB #89736
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com
craig@clalegal.com

Susan Mary Rotkis, VSB 40693
Price Law Group, APC
382 S. Convent Ave.
Tucson, AZ 85701
Telephone: (520) 622-2481
Email: susan@pricelawgroup.com

*Attorneys for Plaintiffs*